MICHAEL PAULSEN, Plaintiff-Appellant, v. JOHNNIE COCHRAN *et al.*, Defendants-Appellees.

First District (1st Division)    No. 1—04—1325

Opinion filed March 14, 2005.

Robert R. Tepper, of Chicago, for appellant.

Michael L. Resis, Timothy J. Fagan, and John D. LaBarbera, all of O'Hagan, Smith & Amundsen, L.L.C., of Chicago, for appellee Anthony Schuman.

Melvin L. Brooks, of Cochran, Cherry, Givens, Smith & Montgomery, L.L.C., of Chicago, for other appellees.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:
Plaintiff Michael Paulsen appeals the dismissal of his legal malpractice action against defendants Johnnie Cochran and James D. Montgomery of the Cochran law firm, and Anthony Schuman (also written Schumann), an attorney who is not with the Cochran firm.

The complaint arose from the representation and sentence Paulsen received when he pled guilty to a drug offense in Arizona. The trial court dismissed Paulsen's complaint on defendants' motion under sections 2—615 and 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615, 2—619 (West 2002)). The trial court found that Paulsen had failed to plead and prove "actual innocence" as is required for a convicted person to state a cause of action for legal malpractice against his former criminal defense attorney.

Paulsen appeals. His primary question is whether the actual innocence rule applies when the alleged malpractice resulted in an unfair penalty, not an improper conviction. We affirm.

The record shows that Paulsen, a Chicago resident, was arrested and charged in Arizona in May 2002 with conspiracy to transport marijuana, a Class 2 felony. Paulsen sought representation through the Chicago law office of the Cochran firm, where Montgomery is the managing attorney. The Cochran firm referred Paulsen to an attorney outside the firm, Anthony Schuman. Paulsen claims Schuman "subcontracted" the defense with Joel Schwartz, a Missouri attorney.

Of record is a plea agreement dated August 30, 2002, and signed by Paulsen, Schwartz and Anna M. Atencio, the prosecutor of Navajo County, Arizona. The agreement stated that Paulsen agreed to plead guilty under the following sections of the Arizona Criminal Code (Ariz. Rev. Stat. § 13—101 *et seq.* (2002)): section 13—1003 (conspiracy); section 13—3405(A)(4) (the knowing transport for sale of two pounds or more of marijuana is a Class 2 felony); section 13—3405(D) (court shall order a person convicted under section 13—3405(A)(4) to pay a fine of not less than $750 or three times the value of the marijuana as determined by the court, whichever is greater); section 13—701 (the term of imprisonment for a Class 2 felony is generally five years); section 13—702 (mitigating and aggravating factors generally can alter the sentencing range for a Class 2 felony to as few as 4 or as many as 10 years); section 13—702.01 (the minimum term may be reduced to three years if two or more substantial mitigating factors exist); and section 13—801 (a fine for a felony shall be not more than $150,000).

Paulsen's plea agreement stated, in relevant part:

"THE STATE OF ARIZONA and the Defendant agree to the following disposition of this case:

PLEA: The Defendant agrees to plead guilty to:

\*\*\* CONSPIRACY TO TRANSPORT MARIJUANA, a class 2 felony, occurring on May 25, 2002, [citations].

\* \* \*'

1. The parties stipulate to the following terms \*\*\*:

The defendant shall be placed on probation, terms and conditions

at the discretion of the Court, but to include statutory requirements, and 1 year jail, work release at the discretion of probation.

2. The crime of CONSPIRACY TO TRANSPORT MARIJUANA, A CLASS 2 FELONY, carries a presumptive sentence of 5 years imprisonment ***; a minimum sentence of 4 years (3 if trial court makes exceptional circumstances finding); and a maximum sentence of 10 years (12.5 years if trial court makes exceptional circumstances finding). Probation is available for 7 years. As a condition of probation the court can order the Defendant to serve up to [1] year in the Navajo County jail. *** The maximum fine that can be imposed is *$150,000.00* plus 77% surcharge. ***
SPECIAL CONDITIONS REGARDING SENTENCING:

PURSUANT TO A.R.S. § 13—3405, THE DEFENDANT MUST PAY A FINE OF THE GREATER OF $750.00 OR THREE TIMES THE VALUE OF THE DRUGS SEIZED.

\* \* \*

6. Unless this plea is rejected by the court or withdrawn by either party, the Defendant hereby waives and gives up any and all motions, defenses, objections or requests that he has made or raised, or could assert hereafter, to the court's entry of judgment against him and imposition of a sentence upon him consistent with this agreement."

The agreement was signed by Paulsen and the numbered paragraphs were initialed by him. These included statements that Paulsen had discussed the case and his rights with his lawyer and that he signed the agreement voluntarily.

Paulsen was sentenced to one year in jail, 840 hours of community service and $88,500, the sum of a $50,000 fine plus a $38,500 surcharge.

Paulsen subsequently filed a petition for postconviction relief. The petition is not of record, but prosecutor Atencio's response to the petition is. Atencio acknowledged that, in his postconviction petition, Paulsen sought resentencing as to the fine, but he did not withdraw the guilty plea. Atencio conceded that the fine in the plea agreement was miscalculated. The exact nature and amount of the miscalculations are not clear in the record, but the pleadings show that the $38,500 surcharge should not have been assessed, leaving a fine of $50,000.

Paulsen filed a malpractice complaint against defendants in September 2003. He alleged that Schuman breached his duty by "subcontracting" the criminal defense work to Schwartz, who was not licensed in Arizona. Paulsen claimed he paid $36,000 to Schuman, a portion of which he alleges went to Cochran, the Cochran firm and its

managing attorney Montgomery. Paulsen argued that the fee arrangement makes Cochran, the Cochran firm and Montgomery responsible for the acts and omissions of Schuman.

Paulsen alleged in his complaint that Schuman erred by: (1) failing to contest the forfeiture of $6,000 in money and personal property in Paulsen's possession when he was arrested; and (2) including an improper fine in the plea agreement as shown by the fact that the court reduced the fine; and that (3) with proper representation, he would have received only probation. Paulsen sought at least $50,000 in damages.

The trial court granted defendants' motion to dismiss Paulsen's complaint under sections 2—615 (involuntary dismissal because the complaint is insufficient at law) and 2—619 (involuntary dismissal because of defects in or defenses to the complaint) of the Code (735 ILCS 5/2—615, 2—619 (West 2002)).

Paulsen appeals, claiming he should be compensated by defendants because the plea agreement caused him to "[overpay] his debt to society" and receive an "excessively harsh" sentence. Paulsen contends that neither Illinois law nor public policy requires proof of a criminal defendant's actual innocence to state a cause of action for legal malpractice where, as here, the malpractice claim is grounded on a claim other than a wrongful conviction.

Defendants argue that under Illinois law, a showing of actual innocence is required for a plaintiff to state a cause of action for legal malpractice against his former criminal defense attorney, citing *Kramer v. Dirksen*, 296 Ill. App. 3d 819, 822, 695 N.E.2d 1288 (1998), *Moore v. Owens*, 298 Ill. App. 3d 672, 674, 698 N.E.2d 707 (1998), and *Levine v. Kling*, 123 F.3d 580, 582 (7th Cir. 1997). They argue that the exception to the actual innocence rule in Illinois is the one made in *Morris v. Margulis*, 307 Ill. App. 3d 1024, 1039, 718 N.E.2d 709 (1999), *rev'd on other grounds*, 197 Ill. 2d 28, 754 N.E.2d 314 (2001). There, a defense attorney acted intentionally when he betrayed the criminal client he was defending. As defendants point out, Paulsen does not claim a deliberate betrayal by his attorneys.

We review *de novo* motions to dismiss under sections 2—615 and 2—619 of the Code. *Bunting v. Progressive Corp.*, 348 Ill. App. 3d 575, 580, 809 N.E.2d 225 (2004).

■ The elements of a legal malpractice claim in Illinois are: (1) the existence of an attorney/client relationship; (2) a duty arising from that relationship; (3) a breach of that duty on the part of defendant/counsel; (4) proximate cause; and (5) damages. *Claire Associates v. Pontikes*, 151 Ill. App. 3d 116, 122, 502 N.E.2d 1186 (1986). An additional element is required of a criminal defendant who must prove

his innocence before he may recover from his criminal defense attorney's malpractice. *Kramer*, 296 Ill. App. 3d 819, 695 N.E.2d 1288.

The actual innocence requirement for former criminal defendants who become malpractice plaintiffs has been applied in Illinois at least since 1998. The court in *Kramer* held that a legal malpractice complaint was properly dismissed under section 2—619 of the Code (735 ILCS 5/2—619 (West 1996)) where the plaintiff could not prove his actual innocence. *Kramer*, 296 Ill. App. 3d at 821. The court explained that for policy reasons a criminal defendant must meet a different standard than a civil litigant for stating a claim for legal malpractice. *Kramer*, 296 Ill. App. 3d at 821. This is to eliminate the possibility that someone who has been found guilty of a crime would profit from his criminal activity. *Kramer*, 296 Ill. App. 3d at 821, citing *Levine*, 123 F.3d at 582 (tort law allows damages only for harms to a plaintiff's legally protected interests and the liberty of a guilty criminal is not one of them). A plaintiff who wants to sue his former criminal defense counsel for malpractice must prove his innocence—a requirement he cannot meet unless his conviction has been overturned. *Kramer*, 296 Ill. App. 3d at 822, quoting *Levine*, 123 F.3d at 583.

In *Moore*, also decided in 1998, the plaintiff sued the attorney who defended him on charges of driving under the influence of alcohol (DUI). *Moore*, 298 Ill. App. 3d at 673. After the trial, the defense attorney withdrew. The plaintiff then appealed the conviction. As part of a later plea agreement on unrelated charges, the plaintiff agreed to drop the appeal of his DUI conviction, allowing that conviction to stand. *Moore*, 298 Ill. App. 3d at 675. In the meantime, unaware that the plaintiff had agreed to drop the appeal of his DUI conviction, the appellate court filed an opinion that found ineffective assistance of counsel and reversed the DUI. The case was remanded for a new trial. On remand, the circuit court dismissed the plaintiff's DUI charge under the terms of the plea agreement. *Moore*, 298 Ill. App. 3d at 673. The plaintiff then filed his legal malpractice claim against his former defense attorney. The trial court granted summary judgment in favor of the attorney. This court affirmed the trial court's judgment on the grounds that the plaintiff failed to plead and prove his actual innocence, a requirement to state a legal malpractice against a criminal defense attorney under, among others, *Levine*, 123 F.3d at 582 (applying and predicting Illinois law as requiring proof of actual innocence to state a claim for legal malpractice). The court in *Moore* concluded: "We do not believe that even if a criminal defendant is acquitted on retrial, that alone will suffice as proof of innocence, although it may be evidence for a fact finder to consider. Rather, because of the different burdens of proof in a civil trial and a criminal trial, we believe

that the plaintiff must also prove independently in the civil trial that he was actually innocent and 'not just lucky.' " *Moore*, 298 Ill. App. 3d at 675, quoting *Levine*, 123 F.3d at 583.

In *Morris*, decided in 1999, an exception to the actual innocence rule was recognized. There, the plaintiff sought damages in a malpractice suit against his criminal defense attorney for breach of fiduciary duties by intentionally undermining his own client. *Morris*, 307 Ill. App. 3d at 1037-38. The plaintiff had been convicted of criminal charges related to the failure of a savings and loan company. His convictions were affirmed on appeal. *Morris*, 307 Ill. App. 3d at 1027. The plaintiff filed a legal malpractice action. The trial court granted summary judgment for the defendants on the question of whether counsel breached his fiduciary duty. This court reversed and remanded the cause on various grounds.

One issue addressed on appeal was whether the actual innocence rule stated in *Moore* required the plaintiff to plead actual innocence to state a cause of action for breach of fiduciary duty. Concluding that the complaint at hand was not a traditional malpractice claim, this court declined to require a showing of actual innocence: "To apply *Moore* to a situation where a criminal defense attorney intentionally works to insure his client's conviction would be unconscionable." *Morris*, 307 Ill. App. 3d at 1039. "*Moore* and its 'actual innocence' rule will not be applied to situations where an attorney wilfully or intentionally breaches the fiduciary duties he owes to his criminal defense client. Whether the 'actual innocence' rule should continue to be the law in a *Moore* setting must await another day when a case properly involving that issue comes before us." *Morris*, 307 Ill. App. 3d at 1039. Although *Morris* was reversed by the supreme court in 2001 on other grounds, its conclusions as to the actual innocence rule have not been challenged.

Since recognizing one exception to Illinois' actual innocence rule in *Morris*, Illinois courts have reaffirmed their commitment to the general rule. In *Griffin v. Goldenhersh*, 323 Ill. App. 3d 398, 404-05, 752 N.E.2d 1232 (2001), we reiterated that proof of a defendant's innocence is needed to state a cause of action for a legal malpractice action against a criminal defense attorney. The Seventh Circuit Court of Appeals also has reaffirmed its holding in *Levine* by applying the rule as Illinois law in *Woidtke v. St. Clair County*, 335 F.3d 558, 562 (7th Cir. 2003). There, the Seventh Circuit concluded: "Both Illinois courts and this court have stressed that a successful malpractice action requires that the plaintiff affirmatively establish that he is innocent of the crime charged." *Woidtke*, 335 F.3d at 564-65.

We note in passing that two out-of-state, or foreign, cases were

cited by the trial court: *Gibson v. Trant*, 58 S.W.3d 103, 117 (Tenn. 2001), where the Tennessee Supreme Court held that a plaintiff cannot prevail in a malpractice claim against his criminal defense attorney unless the plaintiff proves he has received postconviction relief; and *Wiley v. County of San Diego*, 19 Cal. 4th 532, 538, 966 P.2d 983, 986, 79 Cal. Rptr. 2d 672, 675 (1998), where the California Supreme Court held that actual innocence is a necessary element for a cause of action for criminal malpractice.

Paulsen argues that the cases cited by the trial court are not dispositive of the issues here because they are based on *Levine*. He contends that *Levine* applies only in situations where the legal malpractice plaintiff seeks redress for a wrongful conviction and that it cannot be applied where something *other than* a wrongful conviction underlies the malpractice action, such as the excessive sentence he alleges here. Paulsen argues that a criminal defendant who pleads guilty should be able to sue his attorney for malpractice if the attorney agreed to a penalty that, in the defendant's opinion, was excessive. He also argues that *Moore* does not establish an "ironclad rule" that malpractice requires proof of actual innocence because the court did not so "*hold.*" (Emphasis in original.) Instead, he contends, the court in *Moore* merely acquiesced to the proposition that proof of innocence was an element of proof in the malpractice case because the parties in *Moore* had so agreed. *Moore*, 298 Ill. App. 3d at 674-75. Paulsen argues that the parties' agreement meant that the court in *Moore* did not *need* to establish, and in fact *did not* establish, an absolute rule requiring a showing of actual innocence and no such rule need be applied here.

Paulsen advocates that we adopt another exception—in addition to the deliberate betrayal factor in *Morris*—to cover his situation. This would allow a cause of action for legal malpractice when a criminal defendant has pled guilty but does not believe that his attorney negotiated the best possible sentence. Because this exact issue apparently has not been considered in Illinois, the parties in their appellate briefs have relied on foreign case law. We note that foreign law is "merely persuasive and not controlling authority in Illinois." *Pekin Insurance Co. v. Home Insurance Co.*, 134 Ill. App. 3d 31, 34, 479 N.E.2d 1078 (1985).

Paulsen cites three foreign cases to support his claim that the actual innocence rule should not apply when a former criminal defendant bases his malpractice claim against his defense attorney on something other than a wrongful conviction.

He cites *Krahn v. Kinney*, 43 Ohio St. 3d 103, 538 N.E.2d 1058 (1989), where the Ohio Supreme Court determined that a legal

malpractice case should not have been resolved in favor of defense counsel where the plaintiff claimed to have suffered not from a wrongful conviction but from a lost opportunity to minimize her criminal record:

> "The inequity of requiring a plaintiff to obtain a reversal of his or her conviction before bringing a malpractice action is apparent from the facts in the present case. [The plaintiff's] claim is based in part on [the attorney's] alleged failure to communicate the prosecutor's [plea] offer. Consequently, [the plaintiff] was forced into the situation of having to plead to a more serious charge or risk a still greater conviction and sentence. [The plaintiff] may have made a valid plea on the day of trial, but she would have been better served had she accepted the earlier bargain. As aptly stated by the court of appeals, the injury in such a situation 'is not a bungled opportunity for vindication, but a lost opportunity to minimize her criminal record.' " *Krahn*, 43 Ohio St. 3d at 105-06, 538 N.E.2d at 1061.

Paulsen also cites *Berringer v. Steele*, 133 Md. App. 442, 758 A.2d 574 (2000), where the Maryland appellate court differentiated between a conviction, which proximately *was* caused by the criminal defendant's own actions, and the sentence, which the court determined proximately *was not* caused by the defendant's own actions. *Berringer*, 133 Md. App. at 507, 758 A.2d at 609. The court there reversed a summary judgment in favor of the attorney who represented the criminal defendant at sentencing because the "[a]ppellant's complaint contained specific allegations from which it could be inferred, in the light most favorable to [the appellant], that [the] appellees presented positions to the court regarding sentencing of which [the] appellant had not been previously advised and which were contrary to his instructions." *Berringer*, 133 Md. App. at 508, 758 A.2d at 610.

Paulsen also cites a Louisiana appellate court case, *Geddie v. St. Paul Fire & Marine Insurance Co.*, 354 So. 2d 718 (La. App. 1978). There, the court recalculated the amount of damages awarded to a criminal defendant who succeeded in a legal malpractice suit "arising from his unlawful confinement in the penitentiary under a four-year sentence for a crime which had a maximum penalty of two years." *Geddie*, 354 So. 2d at 719.

Defendants support their arguments with cases from other jurisdictions which, like Illinois and unlike Ohio, Maryland and Louisiana, have adopted the actual innocence rule: *Belford v. McHale Cook & Welch*, 648 N.E.2d 1241, 1245 (Ind. App. 1995), where the Indiana appellate court decided that because the plaintiff's sentence was within the range of possible sentences and the record showed he

was aware of the range of sentences, a cause of action for legal malpractice could not be stated; *Howarth v. State Public Defender Agency*, 925 P.2d 1330, 1332-33 (Alaska 1996), where the supreme court of Alaska concluded that the legal cause of the plaintiff's sentence was his own intentional criminal conduct despite the fact that his defense attorney's conduct as to sentencing was negligent; *Lynch v. Warwick*, 95 Cal. App. 4th 267, 275, 115 Cal. Rptr. 2d 391, 397 (2002), where the court decided that "the actual innocence requirement for a criminal legal malpractice case applies regardless of whether the former criminal defendant is seeking damages for a wrongful conviction, a longer sentence or for attorney fees"; *Coscia v. McKenna & Cuneo*, 25 Cal. 4th 1194, 1205, 25 P.3d 670, 676, 108 Cal. Rptr. 2d 471, 479 (2001), a conviction bars proof of actual innocence in a legal malpractice action regardless of whether that conviction is the result of a trial or a guilty (or *nolo contendere*) plea.

It is clear that the cases relied on by Paulsen are from states that have not adopted the actual innocence rule. In fact, courts in Ohio (in *Thorp v. Strigari*, 155 Ohio App. 3d 245, 248-49, 800 N.E.2d 392, 395 (2003)) and Louisiana (in *Schwehm v. Jones*, 872 So. 2d 1140, 1147 n.7 (La. 2004)), recently have reaffirmed their rejection of the actual innocence rule. This means that *Krahn*, *Berringer* and *Geddie* are unpersuasive not only because foreign law is not binding on Illinois (*Pekin*, 134 Ill. App. 3d at 34), but also because they are legally distinguishable. The law in Illinois differs from the law in Ohio, Louisiana and Maryland.

Even if Illinois had not adopted the actual innocence rule, this case differs factually from those cited by Paulsen. Paulsen's complaint does not allege, either generally or specifically, that Schwartz or Schuman failed to inform him of the terms of the plea agreement, as did the plaintiff in *Krahn*. Nor does he allege, as did the plaintiff in *Berringer*, that Schwartz or Schuman failed to follow his instructions about sentencing. The record supports the conclusion that Paulsen voluntarily signed the plea agreement and initialed the sections stating he had discussed the plea with his attorney. Nor can Paulsen allege in good faith, as did the plaintiff in *Geddie*, that the plea he signed violated either the maximum sentence for a Class 2 felony (10 or 12.5 years) or the maximum fine for a felony ($150,000) under Arizona law.

■ We also reject Paulsen's claim that he should be entitled to sue for the $6,000 in cash and property he lost at the time of his arrest. Even if we assume that counsel failed to timely contest the forfeiture, Paulsen is not entitled to the return of his cash and property. An obvious reason for this is that in paragraph six of his guilty plea agree-

ment, Paulsen relinquished the right to raise future claims by motion, objection or request.

"Although plea agreements exist in the criminal justice structure, they are governed to some extent by contract law principles." *People v. Evans*, 174 Ill. 2d 320, 326, 673 N.E.2d 244 (1996). An attempt by a criminal defendant to modify unilaterally the provisions in a plea agreement to which he agreed "flies in the face of contract law principles." *Evans*, 174 Ill. 2d at 327. In effect, by signing the plea agreement and accepting paragraph six, Paulsen admitted that the substantive terms of the plea agreement were all he was entitled to expect from the government. Following the rationale of the Alaska Supreme Court in *Howarth*, we find that the cause of Paulsen's loss of cash and property was his intentional criminal conduct, not the negligence of his defense attorney. See *Howarth*, 925 P.2d at 1332-33.

For these reasons, we believe the trial court properly applied the actual innocence rule in dismissing this case. The facts here do not warrant the establishment of another exception to the rule beyond the "betrayal" exception in *Morris*.

■ In his appellate brief, Paulsen alleges that Schuman and Cochran engaged in an improper fee-sharing arrangement and that he paid excessive fees to Schuman for "no meaningful services." We find no record that these issues were considered in the trial court, so they are waived on review. See *Parks v. Kownacki*, 193 Ill. 2d 164, 180, 737 N.E.2d 287 (2000) ("[q]uestions not raised in the trial court cannot be argued for the first time on appeal"). Nor do the facts of record on appeal and the legal contentions in the briefs support these claims. See *Bielecki v. Painting Plus, Inc.*, 264 Ill. App. 3d 344, 354, 637 N.E.2d 1054 (1994) ("[b]are contentions without citation of authority do not merit consideration on appeal and should be rejected").

We affirm the judgment of the circuit court.

Affirmed.

GORDON and McBRIDE, JJ., concur.